## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **J. ROBYN STRADER,** | |
| *Plaintiff*, | |
| v. | Case No. _____ |
| **CVS HEALTH CORPORATION; CVS HEALTH SOLUTIONS, LLC; MINUTECLINIC, LLC; MINUTECLINIC DIAGNOSTIC OF TEXAS, LLC,** | **COMPLAINT** JURY DEMANDED |
| *Defendants*. | |

Plaintiff J. Robyn Strader, by and through counsel, and for her Complaint against Defendants, hereby states as follows:

### INTRODUCTION

1.      J. Robyn Strader is a nurse practitioner who, because of her Christian faith, cannot prescribe contraceptive and abortifacient drugs.

2.      For six and a half years, Defendants (collectively, "CVS") granted Ms. Strader a religious accommodation to not personally prescribe such drugs at the CVS MinuteClinic where she worked. On the rare occasion that a patient would seek such a prescription, she would refer them to another CVS MinuteClinic provider.

3.      This arrangement worked well until CVS abruptly announced in August 2021 that it was revoking *all* religious accommodations that allowed providers to not prescribe these drugs. CVS's new policy is to deny all such religious accommodations without considering the particular circumstances of the employee requesting the accommodation, including to determine whether that employee could be accommodated without undue hardship.

1

4.      CVS subsequently revoked Ms. Strader's religious accommodation, refusing to consider her particular circumstances or even discuss possible alternative accommodations.

5.      CVS could have accommodated Ms. Strader in several ways, including by continuing to honor her religious accommodation that worked successfully for years or transferring her to a virtual position, laboratory education, or a location specializing in COVID-19.

6.      It is a violation of Title VII of the Civil Rights Act of 1964 for an employer to "avoid accommodating a religious practice that it could accommodate without undue hardship." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 770 (2015).

7.      Religious accommodation requests must be considered on an individual basis to determine whether the requesting employee can be accommodated. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1740 (2020) (explaining Title VII's focus on the "individual" alleging discrimination).

8.      An employer cannot sidestep Title VII's requirement to accommodate religious employees by merely labeling a particular function "essential." This label is particularly unconvincing when it concerns less than 0.2% of the functions an employee performs. The relevant inquiry is whether the employee can be accommodated per the employer's statutory duty.

9.      CVS's policy of preemptively denying all such requests regardless of individual circumstances is unlawful and has a disparate impact on its employees on the basis of religion.

10.     In addition to prospectively preempting all requests for religious accommodations, CVS unlawfully derided Ms. Strader's religious beliefs, pressured her to change her beliefs, refused to consider her multiple requests for a religious accommodation, failed to engage with her about possible accommodations, and terminated her because of her religious beliefs.

## JURISDICTION AND VENUE

11.     This civil rights action raises federal claims under Section 706(f)(l), (3), and (g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(l), (3), and (g), and state claims under Chapter 21 of the Texas Labor Code and Chapter 103 of the Texas Occupations Code.

12.     This Court has original jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

13.     This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

14.     This Court has authority to award the requested monetary relief pursuant to 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981a, 2000e-5(g); the requested equitable relief pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(g); and costs and attorneys' fees under 42 U.S.C. § 2000e-5(k).

15.     The Court also may award monetary and equitable relief, costs, and attorneys' fees pursuant to Tex. Lab. Code §§ 21.258, 21.259, and 21.2585, and Tex. Occ. Code § 103.003.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the Defendants are deemed to reside in this District and the unlawful employment practices alleged herein occurred in this District.

17.     On February 9, 2022, Ms. Strader filed her original charge against CVS, naming Defendant CVS Pharmacy, Inc., with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission.

18.     On June 9, 2022, Ms. Strader amended her charge to add Defendants CVS Health Corporation, CVS Health Solutions, LLC, MinuteClinic, LLC, and MinuteClinic Diagnostic of Texas, LLC.

19.     On August 24, 2022, Ms. Strader amended her charge to add a claim of disparate impact.

20.     Ms. Strader received a Notice of Right to Sue, dated January 3, 2023, from the EEOC. *See* Ex. 1, Strader Notice of Right to Sue.

21.     This complaint is filed within 90 days of receipt of the notice.

## PARTIES

22.     Plaintiff J. Robyn Strader is a Christian nurse practitioner who worked at a CVS MinuteClinic in Keller, Texas, from 2015 to 2021. Ms. Strader was at all times material to this action a resident of the nearby Fort Worth, Texas area.

23.     CVS Health Corporation is a healthcare and retail company operating more than 9,900 retail locations across 49 states, the District of Columbia, and Puerto Rico. It is the fourth-largest company in the United States.[1]

24.     In the State of Texas, CVS registered the name "CVS Health Solutions, LLC" for CVS Health Corporation's operations in the state.

25.     CVS operates MinuteClinic, a subsidiary of CVS, at more than 1,100 of its locations nationwide.[2]

26.     CVS registered with the State of Texas the names "MinuteClinic, LLC" and "MinuteClinic Diagnostic of Texas, LLC" for its MinuteClinic operations in that state.

27.     CVS MinuteClinics offer both in-person and virtual healthcare services for minor illnesses and injuries, health screenings and monitoring, vaccinations and injections, and camp and sports physicals services, among other services.[3]

28.     At all times relevant to this Complaint, Defendants have continuously been employers engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-5(b), (g), (h).

29.     Defendants are employers under Tex. Lab. Code § 21.002(8).

30.     At all relevant times, Defendants have more than 500 employees.

---

[1] *See Fortune 500: CVS Health*, Fortune, https://fortune.com/company/cvs-health/fortune500/ (last visited August 19, 2022).
[2] *Id.*
[3] *See Health Care from MinuteClinic*, CVS Health, https://perma.cc/XU53-CZAS (last visited Dec. 16, 2022).

## FACTUAL BACKGROUND

**I.    Plaintiff's Beliefs and Need for a Religious Accommodation**

31.    Ms. Strader is a Christian and longtime member of a Baptist church.

32.    Ms. Strader believes that God creates all human life in His image and that we should protect all human life. Because of her religious beliefs, Ms. Strader cannot participate in any way in facilitating use of contraceptive or abortifacient drugs that could prevent the implantation of an embryo, otherwise cause an abortion, or contribute to infertility.

33.    Ms. Strader believes that all hormonal contraceptives that can be obtained via a nurse practitioner's prescription in Texas could prevent the implantation of an embryo, otherwise cause an abortion, or cause a woman to become infertile.

34.    Ms. Strader has never prescribed contraceptive or abortifacient drugs, and it would violate her religious beliefs to do so.

35.    Ms. Strader sometimes uses the term "birth control" to refer to contraceptive or abortifacient drugs.

36.    Before her nursing career, Ms. Strader taught science at the high school and pre-professional levels. She has multiple degrees, including a Ph.D. in Education from the University of Toledo Medical Center; a Doctor of Chiropractic from Parker University; a Masters of Science in Nursing, Nursing Education, and Family Nurse Practitioner from Texas Woman's University; and a Masters in Business Administration, also from Texas Woman's University.

**II.    CVS Granted Ms. Strader a Religious Accommodation**

37.    Ms. Strader excelled at her job as a nurse practitioner.

38.    In 2015, when Doris Harvey hired Ms. Strader for a CVS MinuteClinic nurse practitioner position, Ms. Harvey and Ms. Strader discussed birth control. Ms. Harvey reassured Ms. Strader that CVS will never require Ms. Strader to prescribe hormonal contraceptives while employed with CVS.

39.    At the time, Ms. Harvey was the CVS MinuteClinic manager over all of Texas.

40.     After Ms. Strader worked at CVS MinuteClinic for about five months, CVS began offering prescription hormonal contraceptives at the CVS MinuteClinic where Ms. Strader worked.

41.     Ms. Strader called CVS Human Resources to determine whether she needed to file paperwork related to her religious accommodation. HR responded that they would take care of everything, stating that no paperwork was required per company policy.

42.     HR stated that they would notify Ms. Strader's manager of Ms. Strader's religious accommodation, and that CVS would not require Ms. Strader to prescribe hormonal contraceptives.

43.     To the best of Ms. Strader's knowledge, her manager at that time and all subsequent managers, up to and including Dana Young, knew about her religious accommodation.

44.     CVS's accommodation of Ms. Strader's religious beliefs functioned well for six and a half years. Most of the care she provided related to respiratory viruses, urinary tract infections, acute illnesses, and vaccines for schoolchildren.

45.     Over that time, Ms. Strader saw approximately five individuals per year who expressed interest in hormonal birth control pills or the Depo-Provera injection.

46.     On those rare occasions, Ms. Strader referred the client to the other nurse practitioner with whom she alternated shifts at the same CVS MinuteClinic, or to a nearby CVS MinuteClinic, one of which is approximately 1.7 miles away.

47.     Ms. Strader worked at a CVS MinuteClinic located at 801 North Tarrant Parkway, Keller, Texas 76248.

48.     A nearby CVS MinuteClinic, located at 8000 Denton Highway, Watauga, Texas 76148, is a five-minute drive from the CVS MinuteClinic in Keller.

49.     Another nearby CVS MinuteClinic, located at 6401 Precinct Line Road, North Richland Hills, Texas 76180, is a twelve-minute drive from the CVS MinuteClinic in Keller.

50.     Referring CVS MinuteClinic clients to other practitioners is common.

51.     Ms. Strader regularly accepted referrals from other CVS MinuteClinic practitioners for services they were not qualified, not willing, or otherwise not able to provide, such as for urinary tract infection examinations or Department of Transportation physical examinations.

## III.   CVS Preemptively Denied Disfavored Religious Accommodation Requests for All Nurse Practitioners Regardless of Individual Circumstances

### a.     The New Culture at CVS

52.     At the time of Ms. Strader's hire, CVS policy and culture were more favorable toward religious accommodations. The employee handbook included a section on how the company supported conscience objections.

53.     CVS corporate culture has changed.[4] After the policy change, CVS's diversity statement included a list of classes protected from discrimination but notably omitted religion.[5]

### b.      The Blanket Policy on Newly Minted "Essential" Functions

54.     On August 26, 2021, CVS held a Town Hall meeting in which Angela Patterson, Chief Nursing Officer at CVS Health Corporation, announced that all employee providers and nurses at all CVS MinuteClinic locations would now be required to perform certain functions CVS suddenly deemed essential.

55.     Ms. Patterson followed the meeting with an email stating that "treatment for pregnancy prevention ... must be offered by every Provider and Nurse, as appropriate to licensure, at MinuteClinic." Ex. 2, Town Hall Summary Email.

56.     CVS made no indication that it was ending all referrals for healthcare services at its MinuteClinics, only referrals for "pregnancy prevention services," which includes prescriptions for hormonal birth control pills and the Depo-Provera injection.

---

[4] Christopher F. Rufo, *CVS Execs Rake in Millions While Lecturing Wage-Workers on Wokeness*, N.Y. POST (Sept. 23, 2021), https://perma.cc/N2E7-UEQS ("The training asked CVS employees to circle their identities—including race, gender, sexuality, and *religion*—and then reflect on their 'privilege' during the discussion… CVS promises 'swift action against non-inclusive behaviors.'" (emphasis added)).

[5] *Diversity*, CVS Health (Dec. 5, 2021), https://web.archive.org/web/20211215113841/https://jobs.cvshealth.com/diversity-cvs-health/ ("We are an equal opportunity and affirmative action employer. We do not discriminate in recruiting, hiring or promotion based on race, ethnicity, sex/gender, sexual orientation, gender identity or expression, age, disability or protected veteran status.").

57.     This policy change directly impacted Ms. Strader, who needed to make these referrals because of her religious beliefs.

58.     CVS Health Corporation implemented this policy nationwide through its related or subsidiary corporations, including the other named Defendants.

### c.     CVS Cancels Ms. Strader's Religious Accommodation

59.     On or around August 28, 2021, Ms. Young, Senior Practice Manager over the CVS MinuteClinic in Keller, Texas, called Ms. Strader and informed her of a conversation that Ms. Young had with her own manager, Area 5 Director Laura Lambert.

60.     Ms. Young told Ms. Strader that CVS would no longer grant or continue religious accommodations for hormonal contraceptives. According to Ms. Young, Ms. Lambert also conveyed that no one in the Keller area had a religious accommodation on file.

61.     Ms. Young said she told Ms. Lambert that Ms. Strader had a religious accommodation that exempted her from personally prescribing hormonal contraceptives.

62.     Ms. Young also said to Ms. Strader that because she did not re-apply for a religious accommodation after receiving an accommodation upon being hired, her accommodation must have "expired." Ms. Young told Ms. Strader to contact HR and get this sorted out because "there won't be any religious accommodations for anything like this in the future."

## IV.   CVS Ignored Ms. Strader's Three Letters Requesting Religious Accommodation, Pressured Her to Abandon Her Religious Beliefs, and Fired Her

### a.     Religious Accommodation Requests

63.     On August 30, 2021, Ms. Strader wrote and asked CVS to continue accommodating her religious beliefs as it had done for the previous six and a half years. In her letter, she said:

> When I was hired by Minute Clinic, there was a condition agreed upon at the time of my hire that I would never be asked to prescribe any method of birth control while I was an employee of Minute Clinic. After my hire, Minute Clinic began offering contraceptive services. Because of the condition agreed upon at the time of my hire, I was extended an accommodation that protected my request to never be asked to prescribe contraceptives.  I am grateful that Minute Clinic has honored

this agreement. I am asking that CVS confirm that this agreement will continue to be honored.

64.     After a few weeks with no response, Ms. Strader called HR three times seeking to confirm her religious accommodation.

65.     Twice, Ms. Strader called during her lunch break but had to disconnect after being placed on hold for over an hour.

66.     When not working, after a more than two-hour wait on the phone, Ms. Strader was finally able to reach HR to discuss her religious accommodation. The HR employee said she did not know what Ms. Strader should do about her religious accommodation that she not be required to prescribe hormonal contraceptives.

67.     On September 23, 2021, Ms. Strader wrote CVS again by U.S. certified mail to reiterate her request that CVS continue to accommodate her religious beliefs as it had done for six and a half years.

68.     On October 20, 2021, having still received from HR no response about her religious accommodation, Ms. Strader emailed the CVS legal office and general counsel asking CVS not to fire her because of her religious beliefs and again reiterating her religious accommodation.

**b.     Pressure from Manager**

69.     CVS never engaged with Ms. Strader about how it could continue to accommodate her religious beliefs against prescribing contraceptive and abortifacient drugs.

70.     Rather, starting on or around August 28, 2021, Ms. Young called or visited Ms. Strader at work on a near-weekly basis to ask whether Ms. Strader was going to change, abandon, or violate her religious views and prescribe hormonal contraceptives.

71.     Sometimes Ms. Young even called Ms. Strader on Ms. Strader's days off to ask whether Ms. Strader was going to change, abandon, or violate her religious views and prescribe hormonal contraceptives.

72.     During these conversations, Ms. Young often sounded anxious and asked Ms. Strader a series of questions, but typically without giving Ms. Strader an opportunity to answer. It

was evident that Ms. Young was under pressure from her managers to get Ms. Strader to quit or abandon her religious accommodation.

73.     Ms. Young was also trying to make Ms. Strader feel ashamed about her religious beliefs.

74.     Ms. Young pressed Ms. Strader on her religious views at least six times, including the two conversations referenced below.

75.     On or around September 23, 2021, Ms. Young called Ms. Strader and said that, if she did not agree to prescribe hormonal contraceptives, Ms. Strader would be fired on October 31, 2021.

76.     During the conversation, Ms. Young explained that her supervisor, Ms. Lambert, told her to make sure that Ms. Strader understood that she would be fired if she did not change her religious beliefs about prescribing hormonal contraceptives.

77.     Ms. Young then demanded to know what Ms. Strader was going to do: Did she ask for a religious accommodation? Was she going to prescribe the prescriptions at issue? Ms. Strader told her that she had written CVS to ask that it continue to accommodate her religious beliefs.

78.     On or around October 21, 2021, Ms. Young repeatedly told Ms. Strader such things as: "This is your decision"; "You are doing this to yourself"; and "Think about this! If you don't change your mind—you know what that means." Ms. Strader responded that she was not the one changing her mind—CVS was changing its mind.

79.     Ms. Young ended the conversation by remarking disapprovingly that Ms. Strader had "strong beliefs."

**c.     CVS Terminates Ms. Strader's Employment**

80.     On October 31, 2021, CVS terminated Ms. Strader's employment by written notice given through Ms. Young.

81.     Before firing Ms. Strader, CVS never responded to her three letters (sent from August to October) asking for a religious accommodation related to prescribing hormonal contraceptives.

### V.    CVS Did Not Consider Any Alternative Accommodations

82.    CVS never discussed possible accommodation options with Ms. Strader even though CVS had numerous ways to provide a reasonable accommodation without undue hardship on the business.

83.    Among other possible alternatives, CVS could have allowed Ms. Strader to continue in her position and refer any incoming patients seeking contraceptive or abortifacient drugs to another CVS MinuteClinic nurse practitioner, including a virtual CVS MinuteClinic nurse practitioner. This proven accommodation had already worked without undue hardship for six and a half years.

84.    CVS also could have transferred Ms. Strader to a position that does not involve prescribing contraceptive and abortifacient drugs, such as a position in laboratory education or in a CVS MinuteClinic that exclusively focuses on COVID-19.

85.    And CVS could have transferred Ms. Strader to a virtual nurse practitioner position. Because there are several virtual nurse practitioners on duty at one time, a referral to another provider could happen right away.

86.    Ms. Strader is well qualified for lateral nurse practitioner positions in laboratory education or CVS's COVID-19 and virtual health clinics.

87.    CVS facilitates similar religious accommodation requests in its pharmacies. In at least some locations, CVS provides religious accommodations to pharmacists and pharmacy technicians who cannot dispense contraceptives and abortifacients due to their religious beliefs.[6] In these situations, the pharmacist refers to another on-duty pharmacist.

88.    Not every CVS MinuteClinic offers the same services. CVS's website allows prospective patients to use its "clinic locater" website to filter MinuteClinics by the services each clinic offers for a geographic area.[7]

---

[6] *See* Sarah Edwards, *CVS Pharmacy Has Similar Policy to Walgreens, Allows Pharmacists to Deny Birth Control Prescriptions*, USA TODAY, July 26, 2022, https://perma.cc/3NR5-F998.

[7] *See Minute Clinic: Clinic Locator*, CVS, https://perma.cc/UR5Q-398V (black button labeled "+ Filter clinics by").

89.     Patients can screen each clinic for numerous services. For instance, when selecting for clinics that offer services for gonorrhea, vaginal discharge, herpes simplex virus, trichomoniasis, and vaginosis, the clinic locator reports that there are zero clinics near Keller, Texas, that offer such services. The clinic locator lists five clinics near Keller that offer birth control.

90.     CVS could have considered whether its online appointment scheduling system could screen patients by service requested to direct them to the appropriate location. Prospective patients must already inform CVS what category of service they are seeking, such as Women's Health services, before booking an appointment.

91.     CVS already requires patients to schedule an appointment before any patient can see a nurse practitioner. Even walk-in patients must schedule an appointment at a CVS MinuteClinic kiosk before seeing a nurse practitioner.[8]

92.     Despite knowing of her need for a religious accommodation, CVS did not consider any of these alternatives.

## VI.     CVS Fired Other Nurse Practitioners Who Sought Religious Accommodations

93.     Ms. Strader is aware of CVS Health Corporation and related subsidiaries firing at least three other CVS MinuteClinic nurse practitioners in three other states—Florida, Kansas, and Virginia—because of their sincere religious beliefs, including against prescribing contraceptive and abortifacient drugs.

94.     Upon information and belief, CVS previously gave those three nurse practitioners religious accommodations not to prescribe such drugs until it suddenly fired them under its new August 2021 policy to revoke all religious accommodations related to "pregnancy prevention" services.

---

[8] *See Minute Clinic: Clinic Locator*, CVS, https://perma.cc/NY3Y-LBP4 ("Appointments are now required. You will need to schedule online (recommended) or walk in to make an appointment.").

95.     Some of those nurse practitioners would refer patients seeking hormonal contraceptive and abortifacient drugs to a nearby CVS MinuteClinic or to a nurse practitioner who worked an alternate shift at the same CVS MinuteClinic as the referring nurse practitioner.

96.     At least two of those nurse practitioners asked CVS to transfer them to a virtual or COVID-19 clinic, where they would not need to prescribe contraceptive and abortifacient drugs or could instantly refer patients to another virtual nurse practitioner, but CVS responded that nurse practitioners must be willing to prescribe hormonal contraceptives in even the virtual and COVID-19 clinics.

## VII.   CVS Revoked Longstanding Religious Accommodations and Refused to Transfer Nurse Practitioners to Lateral Positions Even Though Numerous Nurse Practitioner Positions Remain Vacant at CVS MinuteClinics Nationwide

97.     Since Ms. Strader's termination, she has received numerous phone calls, text messages, and approximately one to two emails each week from recruiters seeking to hire Ms. Strader for CVS MinuteClinic nurse practitioner positions at four different CVS MinuteClinics in the Dallas and Fort Worth, Texas area, which includes the CVS MinuteClinic in Keller.

98.     One recruiter was very insistent with Ms. Strader that she is "a perfect fit for this position." He said, "There is no reason for you not to take this job—you would be perfect."

99.     Another recruiter was adamant, "You will be a great fit for this job."

100.     Ms. Strader had to inform the recruiters that she would like to work for CVS, but CVS would not hire her because of her religious beliefs.

101.     Since CVS fired Ms. Strader, her CVS MinuteClinic in Keller, Texas, has repeatedly listed a nurse practitioner position there to be vacant.[9]

---

[9] *See Job Search Results: Nurse Practitioner (NP / PA)*, CVS, https://perma.cc/CEJ3-9LPM (January 10, 2023) (showing an open position in Keller, Texas).

## FIRST CAUSE OF ACTION

### Violation of Title VII: Failure to Accommodate

102.     Plaintiff incorporates and adopts by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

103.     Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Strader's employment.

104.     Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

105.     Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1).

106.     "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

107.     Ms. Strader was an outstanding nurse practitioner and well-qualified for her position.

108.     CVS knew Ms. Strader is a Christian with religious objections to prescribing contraceptive and abortifacient drugs.

109.     CVS is able to reasonably accommodate Ms. Strader's religious observance or practice without undue hardship on the conduct of the employer's business.

110.     CVS accommodated Ms. Strader's religious beliefs about prescribing hormonal contraceptives for six and a half years without a problem or a single customer complaint.

111.     CVS discriminated against Ms. Strader because of her religion by revoking her religious accommodation and refusing to discuss any possible alternative religious accommodations.

112.    Accommodating Ms. Strader did not and would not cause undue hardship to CVS's business.

113.    Out of the roughly five thousand clients Ms. Strader saw each year, she received only about five requests for contraceptive or abortifacient drugs per year. Those patients were referred to another CVS MinuteClinic provider at the same location or a nearby CVS MinuteClinic provider.

114.    CVS could have accommodated Ms. Strader in many ways, such as allowing her to refer patients requesting contraceptive or abortifacient drugs to other CVS MinuteClinic nurse practitioners, including virtual nurse practitioners, or transferring her to a position in laboratory education or in a COVID-19 clinic that does not prescribe those drugs.

115.    CVS's discriminatory practices described above denied Ms. Strader compensation and other benefits of employment to which she is entitled and caused her to suffer emotional distress.

116.    As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

117.    Defendants are jointly and severally liable.

118.    Plaintiff is entitled to front pay, back pay, restitution, compensatory damages, including emotional pain and suffering damages, and injunctive relief to be restored to her position. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

119.    CVS's conduct was intentional, and it acted with malice, oppression, or reckless indifference to the protected rights of Ms. Strader. Plaintiff is thus entitled to punitive damages in an amount to be determined at trial. 42 U.S.C. § 1981a.

**SECOND CAUSE OF ACTION**

**Violation of Title VII: Disparate Treatment**

120. Plaintiff incorporates and adopts by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

121. Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Strader's employment.

122. Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

123. Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1).

124. CVS knew Ms. Strader is a Christian with religious objections to prescribing contraceptive and abortifacient drugs.

125. CVS discriminated against Ms. Strader because of her religion by allowing CVS MinuteClinic nurse practitioners to refer clients for secular reasons, but not for religious reasons.

126. CVS would not have terminated Ms. Strader in the absence of her religion.

127. In the alternative, Ms. Strader's religion was a motivating factor for her termination.

128. CVS, including though Ms. Young, pressured Ms. Strader to change, abandon, or violate her religion, and fired her when she refused to do so.

129. CVS discriminated against and fired Ms. Strader because of her religion.

130. CVS's discriminatory practices described above denied Ms. Strader compensation and other benefits of employment to which she is entitled and caused her to suffer emotional distress.

131. As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

132.     Defendants are jointly and severally liable.

133.     CVS's conduct constitutes discrimination on the basis of religion under 42 U.S.C. § 2000e-2(a). *See also id.* § 2000e-2(m).

134.     Plaintiff is entitled to front pay, back pay, restitution, compensatory damages, including emotional pain and suffering damages, and injunctive relief to be restored to her position. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

135.     CVS's conduct was intentional, and it acted with malice, oppression, or reckless indifference to the protected rights of Ms. Strader. Plaintiff is thus entitled to punitive damages in an amount to be determined at trial. 42 U.S.C. § 1981a.

### THIRD CAUSE OF ACTION
### Violation of Title VII: Disparate Impact

136.     Plaintiff incorporates and adopts by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

137.     Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Strader's employment.

138.     Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

139.     Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(2); *see also id.* § 2000e-2(k)(1).

140.     On or about August 2021, CVS announced its policy or practice that it would now deem "pregnancy prevention" services to be "essential" functions that "must be offered by every Provider and Nurse, as appropriate to licensure, at MinuteClinic."

141.    Under this policy, CVS will not grant any exceptions.

142.    CVS's policy or practice was not consistent with business necessity.

143.    Less discriminatory alternatives, including allowing religious accommodations or allowing exceptions for Providers and Nurses who work in positions or locations where they are never or rarely asked to provide such services, such as COVID-19 clinics.

144.    This policy has a disparate impact on employees, including Christian employees like Ms. Strader, who have religious beliefs inconsistent with providing contraceptive and abortifacient drugs.

145.    As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

146.    Defendants are jointly and severally liable.

147.    Plaintiff is entitled to front pay, back pay, restitution, compensatory damages, including emotional pain and suffering damages, and injunctive relief to be restored to her positions. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

### Violation of Texas's Law Against Religious Discrimination

148.    Plaintiff incorporates and adopts by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

149.    Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants"), acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Strader's employment.

150.    Defendants are employers within the meaning of Tex. Lab. Code § 21.002(8)(A), as they are engaged in an industry affecting commerce and have more than fifteen employees.

151.    The State of Texas guarantees employees "freedom from discrimination" in "employment transactions." Tex. Lab. Code § 21.001(4).

152.    It is an unlawful employment practice to "discharge[] an individual" or "discriminate[] in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of religion. Tex. Lab. Code § 21.051.

153.    Religion includes "any aspect of religious observance, practice, or belief." Tex. Lab. Code § 21.108.

154.    An employer must provide employees a reasonable accommodation unless the employer "demonstrates that the employer is unable reasonably to accommodate the religious observance or practice of an employee or applicant without undue hardship to the conduct of the employer's business." Tex. Lab. Code § 21.108.

155.    CVS's conduct constituted discrimination on the basis of religion under Tex. Lab. Code § 21.051.

156.    CVS unlawfully denied a religious accommodation under Tex. Lab. Code § 21.108.

157.    CVS would not have terminated Ms. Strader in the absence of her religion.

158.    As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

159.    Defendants are jointly and severally liable.

160.    CVS's discriminatory practices described above denied Ms. Strader compensation and other benefits of employment to which she is entitled. Ms. Strader is entitled to front pay, back pay, and injunctive relief to be restored to her position. Additionally, Ms. Strader is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

161.    CVS's conduct was intentional, and it acted with malice or reckless indifference to the protected rights of Ms. Strader. Plaintiff is thus entitled to punitive damages in an amount to be determined at trial. Tex. Lab. Code § 21.2585.

## FIFTH CAUSE OF ACTION

**Violation of Texas Law Protecting Medical Personnel from Participating in Abortions**

162.    Plaintiff incorporates and adopts by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

163.    Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the policy at issue in this lawsuit.

164.    Under Tex. Occ. Code § 103.001, "A physician, nurse, staff member, or employee of a hospital or other health care facility who objects to directly or indirectly performing or participating in an abortion procedure may not be required to directly or indirectly perform or participate in the procedure."

165.    Under Tex. Occ. Code § 103.002(a), "A hospital or health care facility may not discriminate against a physician, nurse, staff member, or employee, or an applicant for one of those positions, who refuses to perform or participate in an abortion procedure."

166.    Tex. Occ. Code § 103.003 provides a private right of action.

167.    CVS MinuteClinic is a facility that provides health care to patients.

168.    Ms. Strader objects to prescribing abortifacient drugs, and thereby participating in an abortion procedure.

169.    CVS required her to prescribe abortifacient drugs, and thereby participate in an abortion procedure.

170.    CVS discriminated against Ms. Strader because she would not prescribe abortifacient drugs, thereby participate in an abortion procedure.

171.    As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

172.    Defendants are jointly and severally liable.

173.    CVS's discriminatory practices described above denied Ms. Strader the right to refuse to participate in abortion procedures. Ms. Strader is entitled to compensatory damages,

reinstatement, back pay plus 10% interest, an injunction against CVS's policies and practices requiring employees to participate in abortions, the reasonable costs of this lawsuit, and her reasonable attorneys' fees. Tex. Occ. Code § 103.003.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a.  Declare that the acts and practices complained of herein are in violation of Title VII, the Texas Labor Code, and the Texas Occupations Code;

b.  Enjoin and permanently restrain these violations of Title VII, the Texas Labor Code, and the Texas Occupations Code;

c.  Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Ms. Strader and which eradicate the effects of its past and present unlawful employment practices;

d.  Order Defendants to provide Plaintiff with a reasonable religious accommodation, place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment of her, and make her whole for all earnings and benefits she would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, wages and benefits, including interest, pre-judgment and post-judgment;

e.  Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of herein, including relocating expenses and job search expenses, in amounts to be determined at trial;

f.  Order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial;

g.  Order Defendants to pay Plaintiff punitive damages for its malicious, oppressive conduct, in amounts to be determined at trial;

h.  Order Defendants to pay Plaintiff nominal damages;

i.  Award Plaintiff the costs associated with this action and reasonable attorneys' fees against Defendant.

j.  All other further relief that the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted this 11th day of January, 2023.

*/s/ David J. Hacker*
Jeffrey C. Mateer
TX Bar No. 13185320
David J. Hacker
TX Bar No. 24103323
Ryan N. Gardner
TX Bar No. 24101790
FIRST LIBERTY INSTITUTE
2001 West Plano Pkwy., Ste. 1600
Plano, TX 75075
(972) 941-4444
jmateer@firstliberty.org
dhacker@firstliberty.org
rgardner@firstliberty.org

Stephanie N. Taub*
AR Bar No. 2021151
FIRST LIBERTY INSTITUTE
P.O. Box 744
Cabot, AR 72023
staub@firstliberty.org

Christine Pratt*
FL Bar No. 100351
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. NW
Suite 1410
Washington, DC 20004
202-506-4027
cpratt@firstliberty.org

*Application for NDTX admission or
admission *pro hac vice* forthcoming

*/s/ Jonathan Berry*
Jonathan Berry*
DC Bar No. 1016352
Jared M. Kelson*
DC Bar No. 241393
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Ste. 350
Washington, DC 20006
(202) 955-0620
berry@boydengrayassociates.com
kelson@boydengrayassociates.com